FOUR STATES COAL CO *v.* OHIO & MICHIGAN COAL CO.

1. SALES—CONTRACTS—PARTIES—TRIAL—INSTRUCTIONS.

In an action by a corporation for a balance due for coal delivered, where plaintiff claimed that the party selling the coal was acting as its agent, the issue as to whether the contract was between defendant and plaintiff or between defendant and a third party, *held*, properly submitted to the jury by the trial judge including the special question submitted by defendant's counsel, which was answered in plaintiff's favor.[1]

2. SAME—BREACH OF CONTRACT—WHETHER PLAINTIFF EXCUSED FOR BREACH PROPERLY SUBMITTED.

Where plaintiff failed to deliver to defendant all of the coal contracted for, on the question as to whether plaintiff was excused from delivering all of the coal contracted for because of defendant's conduct, *held*, properly submitted to the jury.[2]

3. SAME—GOOD FAITH IN DISTRIBUTING COAL IN TIME OF SHORTAGE —TRIAL—INSTRUCTIONS.

On the issue as to whether plaintiff exercised good faith in the distribution of its available coal supply during the periods of shortage, as required by prorating rules, and as to whether defendant received its proportionate share, the charge of the court, while submitted in somewhat general terms, *held*, not misleading to the jury.[3]

Error to Wayne; Smith (Guy E.), J., presiding. Submitted May 1, 1924. (Docket No. 32.) Decided October 6, 1924.

Assumpsit by the Four States Coal Company against the Ohio & Michigan Coal Company for an amount due under a contract for the sale of coal. Judgment for plaintiff. Defendant brings error. Affirmed.

[1]Sales, 35 Cyc. p. 576; [2]Id., 35 Cyc. p. 576; [3]Id., 35 Cyc. p. 577.

*Warren, Cady, Hill & Hamblen (Justin R. Whiting* and *Charles E. Lewis,* of counsel), for appellant.

*Percy W. Grose* and *Connolly & Henderson,* for appellee.

MOORE, J.    This suit was commenced to recover a balance of $15,327.22 claimed to be due the plaintiff corporation for coal delivered during the year 1916 to the defendant, and interest thereon.    The plea was the general issue with notice of set-off and recoupment.    The defendant claims approximately $93,875.91 as damages for the failure of the plaintiff to deliver to the defendant all the coal called for by the contracts in this case.    At the close of the testimony for the plaintiff, and again at the close of all the testimony the defendant moved for a directed verdict.    These motions were overruled and the judge charged the jury as follows:

"1. *The Court:* Gentlemen of the Jury:    This is an action wherein the Four States Coal Company, a West Virginia corporation, is plaintiff and the Ohio & Michigan Coal Company, a Michigan corporation is defendant.

"2. The action is assumpsit, brought by the plaintiff to recover of the defendant $14,787.33 a sum agreed to be due upon a quantity of coal delivered to the defendant.

"3. The claim of the plaintiff in this case is that prior to the month of April, in the year 1916, the Dorothy and Sarita mines were owned by the Four States Coal & Coke Company, a corporation of West Virginia; that prior to that date that company became insolvent and that its properties consisting of these mines, or these mines a part of this property were sold at forced sale; that in contemplation of and looking to the incorporation of the plaintiff, the then promoters of the plaintiff entered into an arrangement, or a contract with one J. D. Ayres, to purchase the Dorothy and Sarita mines, taking the title in his own name, to hold the same until such time as this

corporation could complete its organization and incorporation, at which time he was to transfer the title to these mines to the plaintiff in this case; that the corporation was afterwards completed and that the said J. D. Ayres had purchased this property, as agent or trustee for the plaintiff in this case, and that he had held it until the time of the incorporation, at which time he did transfer the title to the plaintiff in this case; that during the time of the perfecting of the corporation, these same parties, who are now stockholders and owners of this corporation, entered into an agreement or contract, with the said J. D. Ayres, whereby he was to control and operate the mines pending such incorporation which he did. It is also claimed that they entered into an arrangement or contract with the said Ayres, whereby he was to make contracts for and on behalf of the plaintiff when it should become afterwards incorporated.

"4. That while the said J. D. Ayres was so acting as agent or trustee for and on behalf of this plaintiff, he entered into a contract with one Benjamin Nicoll, doing business as B. Nicoll & Company, whereby he contracted to and with the said B. Nicoll & Company, that it should be its sole sales agent.

"5. That B. Nicoll & Company did so act as sole sales agent for the plaintiff in this case upon its incorporation.

"6. It is claimed that afterwards the plaintiff in this case, in pursuance of and consequence of that contract did ratify and affirm, acted upon and attempted to carry out, and did carry out the provisions of the contract so made with the said J. D. Ayres, and with Benjamin Nicoll & Company as sole sales agents of this corporation, the plaintiff, that while the said B. Nicoll & Company was so acting as sole sales agents for this plaintiff pending its incorporation, they entered into a contract with the defendant in this case whereby he was to deliver them a certain quantity of bituminous coal, the amount of which will be for your consideration and determination.

"7. It is the claim of the defendant in this case that it entered into a contract, as claimed, with B. Nicoll & Company, for the purchase of this quantity of coal, but that when it entered into such contract it had no

knowledge of the existence of this corporation, or of its intended organization and incorporation.

"8. I might say here, it is the further claim of the plaintiff at the time the defendant entered into this contract, or these contracts, with B. Nicoll & Company, for the purchase and delivery of this coal, that it did so with full and complete knowledge and understanding of the situation, knowing that B. Nicoll & Company was acting for and on behalf of the promoters of this corporation, and for and on behalf of the plaintiff in this case, when it should afterwards become incorporated.

"9. This the defendant denies and asserts and claims that in purchasing this coal or in making the contract for its delivery, it dealt solely and entirely with B. Nicoll & Company; that it expected that they owned the coal and that it was buying of them and they were selling to it.

"10. The first question in this case for you to determine, gentlemen, is, was B. Nicoll & Company acting for and on behalf of this plaintiff, when it entered into this contract, or these agreements with the defendant in this case, and that question must be decided by you from the evidence in this case, and if you find from the evidence in this case that B. Nicoll & Company was in fact acting for and on behalf of this plaintiff, and it should afterwards become incorporated, then it will become your duty to further consider this case.

"11. If you should find that he was not so acting and I instruct you here whether the defendant had knowledge of the fact or not, if it was in fact so acting for and on behalf of this plaintiff, as its sole sales agent, when these contracts were made, that the plaintiff in this case would then take the position as an undisclosed principal. If you should find that they were not so acting, as agent and trustee, in fact, for this plaintiff, then your verdict in this case would be in favor of the defendant of no cause of action.

"12. In that connection, counsel has handed me the question, a special question which I hand to you, which you will take to your juryroom with you and answer. It is a question that can be answered and must be answered by the one single word 'yes' or 'no.'

"13. You will read that question carefully and put your answer down yes or no as you find it to be.

"14. If you should answer this question 'yes' that means that you should bring in a verdict in this case of no cause of action. If you should answer this question 'no' and find that B. Nicoll & Company was acting as the sole sales agents for the plaintiff, then you will proceed to the further consideration of the questions in this case, as I shall present them to you. If you should find as I have stated to you in the latter, then it would become your duty to consider this case and the defendant's interest in relation to the damages which it claims by consequence of the nondelivery of certain quantities of this coal to him.

"15. Have you the contract of July the first?

"*Judge Connolly:* It is in the pleadings.

"The next question that you would be called upon in this case to consider is: 'Has the defendant kept its obligations as set forth in that contract,' that contract which it is agreed was entered into between B. Nicoll & Company, acting as sole sales agent for the plaintiff in this case, and the defendant in this case reads: 'Your account not to be in excess of ten thousand dollars. Six per cent. discount per annum will be allowed on any unexpired period.'

"16. Now I say to you as a matter of law, these words mean just what they say. That they mean that the defendant in this case must at all times keep his account in such a condition that it will not exceed the sum of ten thousand dollars, and if you find by the evidence in this case that its account did exceed that amount, that more than ten thousand dollars was due upon that account at any one time, and by 'due' I mean that if you shall find that the coal had been delivered and that payment was due upon the deliveries made.

"17. As to the time of delivery, there has been some testimony here in regard to a custom of the coal trade.

"18. There is some evidence as to a stipulated contract or an agreement as to when this money was to become due, and did become due.

"19. If you should find that there is an express agreement between these parties as to the time when that should become due, then that will be the time that the money would become due, and you should

disregard the evidence as to custom.    If you should not so find, then you will take the evidence as to custom and fix the time on which these payments should become due, and in considering the evidence in this case, if you should find under the testimony that B. Nicoll & Company did permit its account to exceed the sum of $10,000 and that the plaintiff in this case, acting upon their rights under this contract, and that they did not waive these rights by any act of theirs, or by silent acquiescence, then your verdict in this case should be one for the plaintiff in the sum of $14,787.33 with interest added, making a total of $18,032.30.

"20. If you should find that the defendant had not been in default and that plaintiff was not excused from nondelivery of the coal mentioned in this contract, for the reason I have stated to you, then it becomes your duty to consider the question of defendant's damages, in this case for such nondelivery, further as I shall outline now.    It is conceded that there was, and is undelivered, of the amount of coal contracted, 14,287 tons.    The defendant claims that there remains undelivered 19,900 tons.

"21. That is one of the questions, which you gentlemen will have to decide in this case, and you must decide it from the evidence as it stands in the case, and say what number of tons you find was undelivered to the defendant.

"22. In so doing, you have a right to take into consideration the contract as offered and received in evidence; you also, in that connection have a right to consider, and it is your duty to consider the evidence in relation to the contract which is said to have been made between these parties on the 24th day of July. The first contract I mention bears date the first day of July.    It is the claim of the defendant that by the terms of a certain contract, made upon the 24th day of July, that this plaintiff agreed to furnish it 3,244 tons—

"*Mr. Whiting:* 3,500, your honor.

"23. *The Court:* 3,500 more coal than was stipulated to be delivered in the first contract, so you see, in arriving at your decision as to the number of tons that will be delivered, you will have to by your deliberation, first determine the amount of tons that the

plaintiff was entitled to delivery—or the defendant was entitled to receive under these contracts.

"24. In doing that you have a right to take in—and it is your duty to take into consideration the fact of the contract of July the 24th and the conditions surrounding it, the conditions upon which it is claimed to be made, that is the letters and conversation, or whatever you may find that bears upon that question.

"25. It is the further claim of the plaintiff in this case that even though you should find that it is not relieved from the responsibility of delivering this coal by the reasons that I have heretofore stated to you that it is not bound to deliver it by reason of circumstances and conditions which arose, which were beyond its control and prevented the delivery of the coal to the defendant, under the provisions and terms of this contract. It is claimed by them, and undisputed in this case that there was a fire and a flood at the mines which minimized or diminished the output of the product of these mines.

"26. It is also claimed that there was an embargo and that by reason of certain labor difficulties and shortages of cars they were unable to deliver to the defendant in this case, the quantity of coal which they had contracted to deliver.

"27. I say to you now, that as a matter of law, that if you find that such conditions did arise and did exist, and that by these conditions the plaintiff's output of the Dorothy and Sarita mines were so minimized or so diminished as to prevent the delivery of the full amount of the coal called for in this contract, that they would then be relieved or excused from delivering any amount of coal which they were prevented from delivering for these reasons, as these are reasons which are beyond the control of the plaintiff in this case. But, before it would be excused for that reason, you must find that the plaintiff acted in good faith; that it used reasonable diligence in repairing its mines, in procuring cars; that it made every honest effort which any prudent man would make to restore the normal output of its mines, and you must find, in addition to that, that it used prudence and diligence and acted honestly in the distribution of the coal which it had to distribute which was the produce of these mines.

"28. You must find, if you find the plaintiff is en-

titled to recover anything in this case, you must find that the plaintiff delivered to them their *pro rata* share of the product of that mine, or those mines which was then under contract.

"29. The plaintiff in this case would have no right to, when there was a shortage of cars existing, when the mines were working at partial capacity, to go out upon the market and take other contracts for the purpose of selling at an advanced price, but the defendant in this case, as I say would be entitled to their fair share or proportion of the product of that mine or those mines under normal conditions if the output reached a normal output; if not they would be entitled to their fair proportion as to their contract, in relation to other contracts which the plaintiff has theretofore made for the purpose of delivering coal to customers.    Now, I believe, and instruct when you gentlemen have decided these questions, you have disposed of this case.

"30. If, in your decision of the questions that I have presented to you, you should find that the defendant is entitled to damages, you will arrive at your verdict by finding the difference between the price contracted to be paid and the market price at the time that you find that it was entitled to the delivery of this coal. The difference between the market price and the contract price, multiplied by any number of tons that you may find it was entitled to would be damages which it would be entitled to receive at your hands, if you find it is entitled to damages.

"31. You will compute the damages in this case upon the 30th day of every month during which you find a default was due, and you have the right to take into consideration the breach, if any, of the contract, and to find whether or not a breach existed during that day, or upon that day, and you have a right to allow for every month or any month that you find a delivery was due and not delivered, and for those months you do not so find they would not be entitled to their delivery.

"32. This is a civil case.    I have given you the law as I believe it to be.    It is your duty to accept it.

"33. The facts in this case are for your consideration, and of the facts you are the sole judges.    You

must take these facts and consider them and arrive at your conclusions by the evidence in this case.

"34. You have a right in doing so, to consider all of the testimony that has been received.

"35. There has been a great deal of testimony offered and rejected, some stricken out. That is not for your consideration in this case.

"36. You have a right in considering the evidence in this case to take into consideration not only all of the testimony that has been given, but all of the circumstances that surround the taking of testimony in this case, you have a right to take into consideration the conduct of witnesses, their appearance upon the stand, their interest or want of interest, if any, which you may find they have in this case, and say whether or not you believe their testimony would be biased for that reason.

"37. There has been a great deal said in this case by counsel, and by the court, but I instruct you that any remarks of counsel, or of the court in the trial of this case, you should not take into consideration in arriving at your verdict. It does not make any difference what you may think that counsel or the court thinks should be the outcome of this case. It is your duty to reach a verdict from the evidence as it stands in the case with the law applied, as I have given it to you.

"38. This is a civil case, as I said. In this, as in all civil cases, the burden of proof is placed upon the plaintiff to establish its case by a preponderance of the evidence. By a preponderance of the evidence is not meant that it must produce a greater number of witnesses, or that it must have the greater number of exhibits. It means that when you have taken into consideration all of the testimony, all of the circumstances as I have outlined them to you, you must find that the testimony of the plaintiff is more weighty and convincing to your minds than that of the defendant.

"39. Now gentlemen of the jury, your verdict in this case will be one in favor of the plaintiff for such a sum as you find it entitled to, or one in favor of the defendant for such sum as you may find it entitled to recover, or one for no cause of action."

The jury returned a verdict for the plaintiff in the

sum of $18,032.30, upon which judgment was duly entered.   The case is brought into this court by writ of error.

There are 104 assignments of error, and counsel say they rely on each of them.

We have in the case a record of more than 1,450 pages.   Briefs of counsel containing more than 200 pages; and have had the benefit of zealous oral arguments by learned counsel.   It is manifest that it is impractical to discuss in this opinion each of the assignments of error.   We shall attempt to group them, and to discuss only those that are pivotal although we have carefully considered all of them.

The first group of assignments which we discuss relates to the question, With whom did defendant make its contract?   The question referred to by the trial judge in the charge which we have quoted was submitted by counsel for the defendant.   We quote from the record:

"And in answer to the special question: 'Is the obligation to pay for the coal sold and delivered and involved in this case between B. Nicoll & Company on the one hand, and Ohio & Michigan Coal Company on the other,' the jury answered and signed 'No.'"

When one reads the affidavit of counsel made in order to get leave to amend the plea, the plea as amended, the cross-examination of the president of the defendant company and the correspondence, it is difficult to see how the question could have been otherwise answered.

It is the claim of the defendant that plaintiff did not deliver the amount of coal it should and as the price of coal advanced materially it was entitled to recoup a very substantial amount as damages.   The plaintiff claimed to be excused from delivering all of the coal because of the conduct of the defendant.   A large volume of testimony was directed to these re-

spective claims.   Learned counsel zealously presented these claims to the jury, and while the trial judge submitted them in somewhat general terms, we think the jury was advised so that it understood what was involved.

Counsel insist the plaintiff did not exercise good faith in the distribution of its available supply of coal during the periods of shortage as required by prorating rules, and complains especially of that part of the charge reading:

"The plaintiff in this case would have no right to, when there was a shortage of cars existing, when the mines were working at partial capacity, to go out upon the market and take other contracts for the purpose of selling at an advanced price, but the defendant in this case, as I say would be entitled to their share or proportion of the product of that mine or those mines under normal conditions if the output reached a normal output; if not, they would be entitled to their fair proportion as to their contract, in relation to other contracts which the plaintiff has theretofore made for the purpose of delivering coal to customers. Now I believe, and instruct when you gentlemen have decided these questions, you have disposed of this case."

and say the record shows that the actual output (as distinguished from the normal output) of the mines between July and December, 1916, was more than sufficient to fill all contracts on the books of B. Nicoll & Company, and argue that by limiting the share to which the defendant was entitled to its proportion of the "normal output" takes away from the defendant such excess as there may have been during this period over and above the normal output.   We think this argument is over critical.   A reading of the charge as given will indicate that the jury was not misled.

A careful examination of the voluminous record, a careful reading of the able briefs, a patient listening

to the zealous argument of learned counsel has not convinced us that any error which went to the merits of the controversy has been committed.

The judgment is affirmed, with costs to the appellee.

CLARK, C. J., and McDONALD, BIRD, SHARPE, STEERE, FELLOWS, and WIEST, JJ., concurred.